For the foregoing reasons, I respectfully dissent.

SUMMERS, Justice (dissenting).

I join in the dissenting opinion of SANDERS, J., for the reasons he has assigned.

154 So.2d 368

**STATE of Louisiana ex rel. Aaron W. BLOUIN, Andrew Saucier and Randall L. Watkins**

v.

**Victor G. WALKER, Warden.**

No. 46564.

April 29, 1963.

Rehearing Denied June 28, 1963.

Anthony J. Vesich, Jr., New Orleans, for relators.

Jack P. F. Gremillion, Atty. Gen., Scallan E. Walsh, Asst. Atty. Gen., Jim Garrison, Dist. Atty., for respondents.

HAMITER, Justice.

Relying on the decision of the United States Supreme Court in Robinson v. State of California (1962), 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758, the above named three relators instituted habeas corpus proceedings in the Twentieth Judicial District Court, in and for the Parish of West Feliciana, seeking to be released from imprisonment at the Louisiana State Penitentiary at Angola. Separate petitions were filed, but the matters were consolidated and heard together inasmuch as all presented the same legal issue.

Following the hearing, the district judge recalled the previously issued alternative writs of habeas corpus and dismissed the proceedings. Thereupon, relators applied here for, and we granted, certiorari.

The record reflects that separate, unrelated, bills of information were filed against the relators in the Orleans Parish Criminal District Court charging that each " * * * in the Parish of Orleans aforesaid, and within the jurisdiction of the Criminal District Court for the Parish of Orleans, did unlawfully and *habitually use a narcotic drug,* to-wit: * * * [here the particular drug used is named] to such an extent as to create a tolerance for said * * * [the named drug], in that he, the said * * * [named accused], did then and there become an addict." (Except for the alleged different dates and types of drugs used the informations were virtually the same.) All of the charges were based on LRS 40:-962A, the provisions of which will be quoted and discussed hereinafter. (Brackets ours.)

The respective accused persons entered pleas of guilty (on different dates) to the charges, and they were sentenced to long periods of hard labor in the State Penitentiary. However, in each case the court immediately suspended the sentence and placed the accused on probation for the term thereof. Further, at the same time and as a condition of the suspension, the court ordered that he enter a government hospital and remain there until cured.

Sometime after imposition of the sentences and the suspensions thereof (the time interval varies in the cases) the sentencing court, following hearings on rules to show cause issued at the instance of the district attorney, revoked the suspension and ordered that the accused serve their sentences. The reason for the revocations is not shown by the record.

In this court relators show that the United States Supreme Court in Robinson v. State of California, supra, held (in a six to two decision) that a California statute which made addiction to narcotic drugs a criminal offense, punishable as such, was violative of the Eighth and Fourteenth Amendments of the Constitution of the United States; they urge that LRS 40:962(A) under which they were convicted is likewise unconstitutional because it, as does the California statute, punishes the mere status of addiction even though resulting involuntarily; and they insist that they " * * * were convicted for a physical and mental condition over which they had no control."

The position thus taken by relators necessitates a comparison of the mentioned statutes. And for such purpose we must view the California statute in the same manner as did the United State Supreme Court—that is, in accordance with the interpretation given it by the California courts.

The California statute, being Section 11721 of the California Health and Safety Code, provides (insofar as pertinent here) that: "No person shall use * * * or be addicted to the use of narcotics, excepting when administered by or under the direction of a person licensed by the State to prescribe and administer narcotics. * * *"

In the Robinson case the trial judge had instructed the jury, inter alia, that such statute made it a misdemeanor for a person either (1) to commit the act of using narcotics or (2) to be addicted to the use of narcotics; and, further, that these offenses are different, the portion of the statute which deals with addiction being based upon a condition or status and not on an act of using. The accused was convicted of the offense of being addicted, and the conviction was affirmed by the reviewing California court.

The majority holding of the United States Supreme Court was that such interpretation by the California courts respecting addiction rendered the statute unconstitutional, as inflicting cruel and unhuman punishment, because it (as so interpreted) criminally punished only an illness which might have been contracted innocently or involuntarily. In thus ruling the court observed: "It would be possible to construe the statute under which the appellant was convicted as one which is operative only upon proof of the actual use of narcotics within the State's jurisdiction. But the California courts have not so construed this law. Although there was evidence in the present case that the appellant had used narcotics in Los Angeles, the jury were instructed that they could convict him even if they disbelieved that evidence. The appellant could be convicted, they were told, if they found simply that the appellant's 'status' or 'chronic condition' was that of being 'addicted to the use of narcotics.' And it is impossible to know from

the jury's verdict that the defendant was not convicted upon precisely such a finding.

"The instructions of the trial court, implicitly approved on appeal, amounted to 'a ruling on a question of state law that is as binding on us as though the precise words had been written' into the statute. * * *

"This statute, therefore, is not one which punishes a person for the use of narcotics, for their purchase, sale or possession, or for antisocial or disorderly behavior resulting from their administration. * * *

"It is unlikely that any State at this moment in history would attempt to make it a criminal offense for a person to be mentally ill, or a leper, or to be afflicted with a venereal disease. * * * in the light of contemporary human knowledge, a law which made a criminal offense of such a disease would doubtless be universally thought to be an infliction of cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. * *

"We cannot but consider the statute before us as of the same category. In this Court counsel for the State recognized that narcotic addiction is an illness. Indeed, it is apparently an illness which may be contracted innocently or involuntarily. We hold that a state law which imprisons a person thus afflicted as a criminal, even though he has never touched any narcotic drug within the State or been guilty of any irregular behavior there, inflicts a cruel and unusual punishment in violation of the Fourteenth Amendment. To be sure, imprisonment for ninety days is not, in the abstract, a punishment which is either cruel or unusual. But the question cannot be considered in the abstract. Even one day in prison would be a cruel and unusual punishment for the 'crime' of having a common cold."

On the other hand the Louisiana statute under which these relators were charged, being LRS 40:962A, provides: "It is unlawful for any person to manufacture, possess, have under his control, sell, give, deliver, transport, prescribe, administer, dispense, or compound any narcotic drug, except as provided in this Sub-part, *or to be or become an addict as defined in R.S. 40:961.*" And LRS 40:961(1), which must be read in connection with Section 962A as noted therein, recites that an addict is " * * * a person who *habitually uses* one or more of the narcotic drugs defined in this Section to such an extent as to create a tolerance for such drug, or drugs, and who does not have a medical need for the use of such drug, or drugs." (Italics ours.)

The above comparison makes it clear that the Louisiana statute, unlike the California law as interpreted by the courts of that state, penalizes not the status or condition of addiction but rather the habitual use of narcotics leading to such a status. Moreover, the *intentional use* of such drugs

(or their *use with guilty knowledge*) is, under our law, a necessary element of the crime of becoming an addict which must be proved by the state just as criminal intent is required to be shown in most other prosecutions.

The general criminal intent or guilty knowledge to be proved in a prosecution for the habitual use undoubtedly is similar to that required for a conviction on a charge of possession of narcotics. In this connection we said in State v. Johnson, 228 La. 317, 82 So.2d 24, which involved a charge of unlawful possession of narcotics, that: "Unlawful possession, where one is invested with some right of dominion, can be defined as a possession which in the ordinary course of human experience necessarily involves knowledge of the fact that one is possessing either rightfully or unlawfully as well as knowledge of the criminal consequences which one should reasonably anticipate to result therefrom. For, no crime can exist without the combination of a criminal act and a criminal intent, or an evil motive, or with a guilty knowledge of its consequences. State v. Howard, 162 La. 719, 111 So. 72." See also State v. Nicolosi, 228 La. 65, 81 So.2d 771 and State v. Peltier, 229 La. 745, 86 So.2d 693.

Inasmuch as the habitual use of a narcotic as denounced by the Louisiana statute necessarily comprises a series of acts committed intentionally or voluntarily, our law

can and could have no application in the prosecution of a person for the mere status or condition of addiction which might possibly, as pointed out by the various opinions in the Robinson case, result unintentionally or involuntarily. And since the federal decision declared the California statute invalid solely because of such a possibility that holding is not controlling, or even relevant, in a determination of the constitutionality of LRS 40:962(A) under which these relators were charged.

While our conclusion herein is based on the aforediscussed interpretation of the Louisiana statute (which we hold to be constitutional) it should be pointed out that such law provides for medical treatment whereas the California enactment does not. Contained in the latter, instead, is a provision reading: "In no event does the court have the power to absolve a person who violates this section from the obligation of spending at least 90 days in confinement in the county jail." Apparently having this provision in mind the author of the majority opinion in the Robinson case wrote: "It [the California statute] is not a law which even purports to provide or require medical treatment." Contrawise, the penal section of the Louisiana law (LRS 40:981) states: " * * * in cases of conviction for the offense of being an addict * * * the court may, in its discretion, if such conviction be the first had by the offender for violating any of the provisions of this Sub-

part, suspend the execution of the sentence and place such offender on probation * * conditioned upon such person voluntarily entering, within not less than thirty days, one of the United States public health service hospitals and remaining in such hospital until certified by the medical officer in charge as being cured. * * *" (Brackets ours.)

Indeed, not one of the instant relators was originally imprisoned; instead, immediately after conviction each was given a suspended sentence and placed on probation with instructions to accept medical assistance for effecting a cure. They are now incarcerated only because of their having violated some condition of the suspension, the purpose of which was to afford an opportunity for their physical and mental betterment.

■ It might well be said additionally that relators are not now in prison for being narcotic addicts; rather, they are so confined for their having failed to comply with an established system of treatment designed to promote the general health and welfare of all inhabitants of this state. That the state has the right to require the taking of such treatments (even with involuntary confinement)—also the power to punish for the failure to comply with the requirement—was clearly shown in the Robinson case itself when the court said: "The broad power of a State to regulate the narcotic drugs traffic within its borders

is not here in issue. More than forty years ago, in [Minnesota ex rel.] Whipple v. Martinson, 256 U.S. 41, 41 S.Ct. 425, 65 L.Ed. 819, this Court explicitly recognized the validity of that power: 'There can be no question of the authority of the state in the exercise of its police power to regulate the administration, sale, prescription and use of dangerous and habit-forming drugs * * *.

"Such regulation, it can be assumed, could take a variety of valid forms. A State might impose criminal sanctions, for example, against the unauthorized manufacture, prescription, sale, purchase, or possession of narcotics within its borders. · In the interest of discouraging the violation of such laws, or in the interest of the general health or welfare of its inhabitants, a State might establish a program of compulsory treatment for those addicted to narcotics. Such a program of treatment might require periods of involuntary confinement. And penal sanctions might be imposed for failure to comply with established compulsory treatment procedures. * * *"

In conclusion, we observe that these relators were charged under a valid Louisiana statute with the habitual use of narcotic drugs within the jurisdiction of the Criminal District Court for Orleans Parish where the prosecutions were initiated. To the charge each pleaded guilty. Consequently, their complaint that they are being illegally imprisoned and detained is without merit.

For the reasons assigned the judgment of the district court is affirmed.

McCALEB, Justice (dissenting).

I fail to perceive the difference between our statute, R.S. 40:962A, and section 11,-721 of the California Health and Safety Code which was held unconstitutional by the Supreme Court of the United States in Robinson v. State of California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758. Both statutes make it unlawful to be addicted to narcotic drugs and, therefore, have for their purpose the infliction of a criminal penalty for a status, rather than denouncing as unlawful a particular act or acts.

The California statute provides "No person shall use * * * or be addicted to the use of narcotics, * * *".

R.S. 40:962A declares "It is unlawful for any person * * * to be or become an addict as defined in R.S. 40:961."

Thus, no act or conduct is prohibited— it is the status of being a drug addict that is proscribed. R.S. 40:961 defines an addict to be a person who habitually uses narcotic drugs " * * * to such an extent as to create a tolerance for such drug, or drugs, and who does not have a medical need for the use of such drug, or drugs". It does not render unlawful the act of habitually using the narcotic drug " * * * leading to such a status", as the majority opinion states. It is the status itself, i. e., " * * * to be or become an addict as defined in R.S. 40:961" that is prohibited.

Nor can I subscribe to the majority statement that the relators "are not now in prison for being narcotic addicts", for it was the alleged crime of being a narcotic addict to which each relator pleaded guilty and for which each was sentenced. And these are the same sentences that relators are now serving in the penitentiary.

There is nothing in our statute requiring drug addicts to enter an institution for rehabilitation. Hence, it is not accurate to say that relators are confined in the penitentiary for " * * * having failed to comply with an established system of treatment designed to promote the general health and welfare of all inhabitants of this state." R.S. 40:981 provides:

"[I]n cases of conviction *for the offense of being an addict* as defined in R.S. 40:961 the court *may in its discretion,* if such conviction be the first had by the offender * * * suspend the execution of the sentence and place such offender on probation * * conditioned upon such person *voluntarily* entering, within thirty days, one of the United States Public Health Service Hospitals and remaining in such hospital until certified by the medical officer in charge as being cured, and conditioned upon such person's *good behavior* for the remainder of his sentence." (Emphasis mine).

This provision makes it doubly clear that the penalty is meted out solely for being an addict. However, unlike the other penalties for infractions of this law (such as sale or possession of narcotic drugs) which prohibit any suspension of sentence, the statute permits the judge to suspend the sentence of a person convicted of the "offense of being an addict" under the specified conditions therein provided. And, like all other laws permitting the judge to suspend sentence, it vests the judge with the right to revoke such suspension when the conditions under which such suspension is granted are not fulfilled.

I respectfully dissent.