219 So.2d 490

**STATE of Louisiana**

**v.**

**Steve BRUNO.**

**Nos. 49298, 49299.**

Feb. 24, 1969.

G. Wray Gill, Sr., George M. Leppert, New Orleans, for appellant.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Edward G. Koch, Jr., Acting Dist. Atty., for appellee.

FOURNET, Chief Justice.

Defendant, Steve Bruno, prosecutes this appeal from the judgment of the trial court revoking the suspension of the two concur-

rent ten year sentences imposed upon him when he pleaded guilty to two charges of being a narcotic addict for violating the conditions of his probation, claiming L.R.S. 40:962 and 40:961 upon which he was prosecuted and convicted are unconstitutional.

Bruno was charged in two identical bills of information on September 21, 1959 [1] with the violation of L.R.S. 40:961 and 40:-962 (the dates of the offense only differed) in that he "within the jurisdiction of the Criminal District Court for the Parish of Orleans, did unlawfully and habitually use a narcotic drug, to-wit: Dilaudid, to such an extent as to create a tolerance for said Dilaudid," and on the next day entered a plea of guilty to both charges, whereupon he was sentenced to two ten year concurrent terms in the state penitentiary at hard labor. Both sentences were suspended and the defendant was placed on probation for a period of five years with the condition that he enter a United States Public Health Hospital within 30 days and remain there until cured and the usual condition that he refrain from violation of any State or Federal penal law. A warrant was issued for his arrest on July 30, 1963 upon representation of the probation officer un-

der whose supervision defendant was placed that he had failed to report to him as required and was out of the state. When it was learned that Bruno had been apprehended and charged with the crime of burglary and larceny in Mississippi and that following his plea of guilty was sentenced to serve five years at hard labor in the state penitentiary, a detainer was promptly placed on him with the authorities there for his return upon the expiration of his sentence. Bruno, having waived extradition proceedings, was returned to Orleans Parish Prison on August 4, 1965 to await action on his case; and on January 4, 1966 the trial judge, after a hearing on the district attorney's motion to show cause why the defendants' suspended sentences should not be revoked, it having been stipulated by defendant's suspended sentences should not present in court, is the same person who pleaded guilty to the two above mentioned charges and also the one who pleaded guilty in Mississippi on a charge of burglary and larceny, ordered the suspension of the two sentences revoked and made them executory.

During the hearing on the rule defendant reserved eight bills of exception but as

---

1. According to information received from the brief of the State, we are informed that the defendant was originally charged in two bills with obtaining narcotics by forgery, and subterfuge in violation of R.S. 40:978 but in order that defendant be availed of the beneficent provisions of 40:981 authorizing the suspension of his sentence in order that he might be hospitalized until cured, the two charges to which he pleaded guilty were substituted instead, the defendant being represented by able counsel, our present district attorney, at the time of entering the plea of guilty to the two charges of addiction.

stated by counsel in his brief, "there is much duplication among these eight bills, but, inasmuch as a single issue is pressed here, i. e., the unconstitutionality of our narcotic addiction statute, the facts pertaining to the other issues, will be omitted," and, accordingly, abandoned all other issues.

At the time of the hearing on the rule to show cause in attacking these two bills of information to which he originally pleaded guilty defendant filed identical motions to quash alleging that "the statute or part thereof to which your defendant plead guilty as follows: 'guilty to the charge of addiction,' is unconstitutional, null and void in the same manner in which the court held in the case of State of Louisiana v. Dale E. Birdsell," 232 La. 725, 95 So.2d 290. Realizing the inapplicability of the Birdsell case [2] to the case at bar both from a factual as well as a legal standpoint, counsel

changed his position and places his reliance solely upon the 1962 decision of the Supreme Court of the United States in the case of Robinson v. State of California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758, wherein it was held that the California statute, West's Ann.Health & Safety Code, § 11721,[3] which counsel claims is essentially the same as our Louisiana addiction statute,[4] was unconstitutional.

█ This identical issue was adjudicated adversely to counsel's contention by this court in the case of State ex rel. Blouin v. Walker, 244 La. 699, 154 So.2d 368, cert. denied, 375 U.S. 988, 84 S.Ct. 521, 11 L.Ed. 2d 474, which decision has been followed by federal courts. See, State ex rel. Hayes v. Allgood, 254 F.Supp. 913, affirmed, 5 Cir., 373 F.2d 741. Counsel, nevertheless, relies upon the dissenting opinion in the Blouin case wherein the author states that in both

2. A mere perusal of the decision of this court in the Birdsell case will readily disclose that this court in reversing the defendant's conviction in that case on a charge of violating L.R.S. 40:962(B) "in that he had possessed a hypodermic syringe and needle" held the trial court erred in refusing to permit the defendant to offer evidence he deemed pertinent to his defense, thus denying him the opportunity of explaining his possession and thereby possibly establishing his innocence.

3. "No person shall use, be under the influence of, or be addicted to the use of narcotics, excepting when administered by or under the direction of a person licensed by the State to prescribe and administer narcotics, * * *."

4. The pertinent part of our comprehensive act dealing with traffic in narcotics, L.R.S. 40:962, provides: "A. It is unlawful for any person to manufacture, possess, have under his control, sell, give, deliver, transport, prescribe, administer dispense, or compound any narcotic drug, except as provided in this Sub-part or to become an addict as defined in R.S. 40:961, * * *" which provides, "* * * (1) 'Addict' means a person who habitually uses one or more of the narcotic drugs defined in this Section to such an extent as to create a tolerance for such drug, or drugs, and who does not have a medical need for the use of such drug, or drugs."

statutes it is the status of being a drug addict that is proscribed.

By a mere reading of the California statute and our Louisisana addiction statute, the former in the light of the United States Supreme Court decision and the latter as analyzed and differentiated by this court, it is readily disclosed counsel's contention lacks merit.

The United States Supreme Court in its decision holding the California statute unconstitutional declared, "It would be possible to construe the statute under which appellant was convicted as one which is operative only upon proof of the actual use of narcotics within the State's jurisdiction. *But the California courts have not so construed this law.* \*· \* \* *The appellant could be convicted, \* \* \*, if they found simply that the appellant's 'status' or 'chronic condition' was that of being 'addicted to the use of narcotics.' And it is impossible to know from the jury's verdict that the defendant was not convicted upon precisely such a finding."* The court after observing, *"The instructions of the trial court, implicitly approved on appeal, amounted to 'a ruling on a question of state law that is as binding on us as though the precise words had been written' into the statute.* \* \* \* This statute, therefore, is not one which punishes a person for the use of narcotics, for their purchase, sale or possession, or antisocial or disorderly behavior resulting from their administration.

\* \* \* In this Court counsel for the State recognized that narcotic addition is an illness. Indeed, it is apparently an illness which may be contracted innocently or involuntarily," concluded, *"that a state law which imprisons a person thus afflicted as a criminal even though he has never touched any narcotic drug, within the State or been guilty of any irregular behavior there, inflicts a cruel and unusual punishment in violation of the Fourteenth Amendment."* (Emphasis added.)

Thus, it may be seen from the language used in the court's opinion they limited the unconstitutional application of the California act to specific cases of state law which imprisons a person who innocently or involuntarily becomes an addict as a criminal "even though he has never touched any narcotic drug within the State or been guilty of any irregular behavior there."

On the other hand this court in holding L.R.S. 40:961 and 40:962 constitutional in the case of State ex rel. Blouin v. Walker, supra, after referring to the law of this state (reported in footnote 4) states a comparison of the two statutes, i. e., the California statute and our addiction statute, "makes it clear that the Louisiana statute, *unlike the California law as interpreted by the courts of that state,* penalizes not the status or condition of addiction but rather the habitual use of narcotics leading to such a status. \* \* \* The intentional use of such drugs (or their use with guilty knowl-

edge) is, under our law, a necessary element of the crime of becoming an addict which must be proved by the state just as criminal intent is required to be shown in most other prosecutions." In the opinion we make it clear that "our law can and could have no application in the prosecution of a person for the mere status or condition of addiction which might possibly, as pointed out by the various opinions in the Robinson case, result unintentionally or involuntarily." (Emphasis added.)

 It has been called to our attention that an appeal will not lie to this court from a ruling of a trial judge on a motion to revoke a sentence previously suspended by it, that such ruling can only be reviewed by this court under its supervisory jurisdiction.[5] See Articles 871, 893, 912, Code of Criminal Procedure.

Although this issue was neither urged in any pleadings nor in argument, the appeal is ex proprio motu dismissed.

BARHAM, J., concurs in the judgment that the case is not appealable and should be dismissed ex proprio motu. The residuum of the opinion is dictum.

McCALEB, Justice (dissenting).

I cannot agree that the district judge was without authority to grant defendant a sus-

pensive appeal from the judgment revoking the suspension of the two concurrent ten-year sentences imposed on him. Article 912 of the Code of Criminal Procedure, as amended by Act 146 of 1968, provides in part:

"A. Only a final judgment or ruling is appealable.

\* \* \* \* \* \*

"C. The judgments or rulings from which the defendant may appeal include, but are not limited to:

(1) A judgment which imposes sentence;

(2) A ruling upon motion by the state declaring the present insanity of the defendant."

It cannot be doubted that a judgment revoking a suspended sentence is a final judgment and, while it does not fall within either of the two categories above mentioned, Subsection C of Article 912 authorizes the appeal herein since it specifically declares that appeals by the defendant include, *"but are not limited to"*, the appeals which come within these specially enumerated instances. It seems to me that, although an appeal from a judgment imposing a suspended sentence may be taken within the time prescribed by law from the date of the imposition of such sentence as provided by Arti-

---

5. It is apt to observe that if this case was before us for consideration pursuant to an order of this court under its super-

visory jurisdiction, that the complaints of the defendant, Bruno, for the reasons above shown lack merit.

cle 893 C.Cr.P., the defendant, who has been given a suspended sentence, should also be allowed an appeal from a judgment revoking such sentence, for it is only then that the sentence is made executory on behalf of the State, and it is only then that the defendant suffers incarceration.

I respectfully dissent.