STATE OF MINNESOTA ON THE RELATION OF WHIPPLE *v.* MARTINSON, SHERIFF OF HEN-NEPIN COUNTY, MINNESOTA.

ERROR TO THE SUPREME COURT OF THE STATE OF MINNESOTA.

No. 224. Argued March 17, 1921.—Decided April 11, 1921.

1. Minnesota Laws, 1915, c. 260, regulating the administration, sale and possession of morphine and other narcotic drugs, *held* consistent with the Fourteenth Amendment. P. 45.
2. The presence in the law of a provision interpreted by the state courts as forbidding physicians to furnish these drugs to drug-addicts otherwise than through prescriptions does not bring it into

conflict with the federal "Anti-Narcotic" Revenue Act, not containing such restriction, since it does not prevent enforcement of the federal act. P. 45.

144 Minnesota, 206, affirmed.

WRIT of error to review a judgment of the Supreme Court of Minnesota, which affirmed an order of a trial court of the State discharging a writ of *habeas corpus* sued out by the relator, Whipple, for the purpose of testing the validity of his sentence for violation of the state law concerning hypnotic drugs. The facts are stated in the opinion.

*Mr. Thomas E. Latimer* for plaintiff in error:

The purpose of the Harrison Narcotic Act is to regulate the sale and distribution of narcotic drugs and limit the dispensing of them to the general public to two means: By and through physicians. This enables the federal authorities to limit the use of these drugs to *bona fide* treatments of the sick, either to relieve pain or to cure those addicted to the use of one or more of these drugs. By limiting the physicians to the practice of their profession only, Congress has taken full control of the sale and disposition of these drugs and their disposal by physicians. There is no phase of this question left for state legislation, since Congress has made provision for the whole field of narcotic sale and disposal from the importation to the placing in the hands of the user and has developed an elaborate system for enforcing the same.

Chapter 260, Laws, 1915, in so far as it conflicts with the Harrison Act, is void, and especially is this true of § 2 of said state law wherein it is provided that a physician may not treat a patient in accordance with the practice of his profession if that patient be a drug addict.

The enforcement of this provision of the state law would come in conflict with the enforcement of the Harrison Narcotic Act and would militate against its successful

operation, in that it would prevent proper treatment of addicts by the gradual reduction method, in that if only written prescriptions can be used the patient can no longer be kept in ignorance of the quantity of the drug he is consuming each day, and one of the essential elements of the treatment is eliminated; and, further, where only written prescriptions can be used, the addict can raise the amount stated upon the prescription and thus overcome the treatment being given by the physician in order to effect a cure.

*Mr. James E. Markham*, Assistant Attorney General of the State of Minnesota, with whom *Mr. Clifford L. Hilton*, Attorney General of the State of Minnesota, was on the brief, for defendant in error.

MR. JUSTICE DAY delivered the opinion of the court.

The relator was convicted of a violation of a statute of the State of Minnesota providing against the evils resulting from traffic in certain habit-forming narcotic drugs, and regulating the administration, sale, and possession thereof. Laws of Minn. 1915, c. 260.

The Minnesota statute in § 1 forbids the sale of morphine and certain other narcotic drugs, with the provision that licensed pharmacists may fill orders for the same to a consumer pursuant to the written prescription of a physician, which must be dated on the day on which it is signed, and bear the signature and address of the physician, and the name of the person for whose use it is intended. It must be serially numbered, dated and filed in the prescription file of the compounder, and retained there for two years open for inspection by the authorities. Prescriptions may be filled but once, and no copy may be given except to an officer of the law, and the drug must be delivered in a container labeled with the serial number of

the prescription, with the date when filled and the name of the person for whose use the medicine is intended, the name of the physician and the name and address of the dispenser. The administration, sale, or disposal of the drugs by a legally licensed physician is permitted when made to a patient on whom he is in professional attendance. The physician must subscribe the name and address of the patient, the date of the sale or disposal, and the amount of the drug transferred, which must be delivered in a container labeled as required by the statute.

Section 2 provides: "It shall be unlawful for any physician or dentist to furnish to or prescribe for the use of any habitual user of the same any of the substances enumerated in Section 1 of this act; provided that the provisions of this section shall not be construed to prevent any legally licensed physician from prescribing in good faith for the use of any patient under his care, for the treatment of a drug habit such substances as he may deem necessary for such treatment; provided that such prescriptions are given in good faith for the treatment of such habit."

The trial court construed this section of the statute as making it unlawful for a physician to furnish the drugs to habitual users out of stocks kept on hand by himself. And such was the offence of which the relator was convicted.

This construction of the section, and the conviction and sentence were sustained by the Supreme Court of Minnesota. 143 Minnesota, 403. Thereupon the relator sued out a writ of habeas corpus in the District Court of Hennepin County, Minnesota, which writ was discharged, and the order was affirmed on appeal to the Supreme Court of Minnesota. 144 Minnesota, 206. The case was then brought here to review this judgment of the state court upon writ of error.

The grounds of attack upon the statute are based upon

an alleged deprivation of federal rights, it being contended: First, that the statute exceeds the authority of the State in the exertion of its police power in that it undertakes to regulate a lawful business in the manner prescribed in the statute, in violation of the Fourteenth Amendment. Second, that the statute conflicts with the terms and provisions of the federal Harrison Anti-Narcotic Drug Act, 38 Stat. 785, and is therefore beyond the power of the State to enact.

There can be no question of the authority of the State in the exercise of its police power to regulate the administration, sale, prescription and use of dangerous and habit-forming drugs, such as are named in the statute. The right to exercise this power is so manifest in the interest of the public health and welfare, that it is unnecessary to enter upon a discussion of it beyond saying that it is too firmly established to be successfully called in question.

As to the alleged inconsistency between the state statute and the Harrison Anti-Narcotic Drug Act, the state court held that there was no substantial conflict between the two enactments. The validity of the Harrison Act was sustained by this court in *United States v. Doremus*, 249 U. S. 86, as a valid exercise of the authority of Congress under the power conferred by the Constitution to levy excise taxes. The provisions of the statute regulating the sale, dispensing or prescribing of drugs were held to bear a reasonable relation to the collection of the taxes provided for, and to be valid although the statute affected the conduct of a business which was subject to regulation by the police power of the State.

It may be granted that the State has no power to enact laws which will render nugatory a law of Congress enacted to collect revenue under authority of constitutional enactments. (See *Savage v. Jones*, 225 U. S. 501; *McDermott v. Wisconsin*, 228 U. S. 115.) But we agree with the state

court that there is nothing in this statute which pre-
vents enforcement of the revenue act in question.   It is
true that the provisions regulating the sale, dispensation,
and disposition of the prohibited drugs are somewhat
different in the two acts.   The prohibitory measures of
the federal statute do not apply to the disposition and
dispensation of drugs by physicians registered under the
act in the regular course of professional practice provided
records are kept for official inspection.   Under the state
law physicians can only furnish prescriptions to addicts,
and may not dispense the drugs to such persons at pleasure
from stocks of their own.

There is certainly nothing in this state enactment, as
construed by the Supreme Court of Minnesota, which
interferes with the enforcement of the federal revenue
law, and we agree with the state court that there is no
conflict between the enactments such as will prevent the
State from enforcing its own law upon the subject.

It follows that the judgment of the Supreme Court of
Minnesota must be

*Affirmed.*