**448**

**COMMONWEALTH of Kentucky, Appellant,**

**v.**

**Charles Russell HALL, Appellee.**

Court of Appeals of Kentucky.

Sept. 24, 1965.

Robert Matthews, Atty. Gen., H. N. Mc-Tyeire, Asst. Atty. Gen., Carl C. Ousley, Jr., Commonwealth's Asst. Atty. Gen., Louisville, for appellant.

Robert Delahanty, Delahanty & Terry, Louisville, for appellee.

PALMORE, Judge.

In Robinson v. State of California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), the Supreme Court held unconstitutional [1] a California law making it a crime to be a drug addict. Pursuant to that decision the Jefferson Circuit Court held that KRS 218.250 is likewise invalid and dismissed the indictment in this case. The Commonwealth appeals. KRS 21.140(3).

Omitting subsection (2), which authorizes probation, KRS 218.250 reads as follows:

"(1) Any person who habitually uses narcotic drugs as defined in KRS 218.010 shall be imprisoned in the workhouse or county jail for twelve months.

\*   \*   \*   \*   \*   \*

"(3) Any peace officer who apprehends a person under the influence of a narcotic drug, *or who hears a person state that he is addicted to the use of narcotics*, shall immediately arrest such person and take him before the proper court to be dealt with according to law." (Emphasis added.)

██  Though it did not categorically say so, the majority opinion in Robinson v. State of California rather clearly implied that if the courts of California had construed the statute in question as "operative only upon proof of the actual use of narcotics within the State's jurisdiction" it would not have offended the Constitution. Cf. 370 U.S. at p. 665, 82 S.Ct. 1417 at p. 1419, 8 L.Ed.2d 758 at p. 761 et seq. In State ex rel. Blouin v. Walker, 244 La. 699, 154 So.2d 368 (1963), construing statutory language not substantially dissimilar from ours, the Supreme Court of Louisiana availed itself of that distinction. In State v. Margo, 40 N.J. 188, 191 A.2d 43, a statute making it an offense to use or be "under the influence" of narcotics for a purpose other than authorized treatment was distinguished from the California provision invalidated in the Rob-

1. Under the "cruel and inhuman punishments" proscription of the 8th Amendment, made applicable to the states by the due process clause of the 14th Amendment.

inson case and was upheld. See also Browne v. State, 24 Wis.2d 491, 129 N.W.2d 175, 131 N.W.2d 169 (1964). As we understand it, however, KRS 218.250 already has been construed as making the mere "status" of narcotics addiction a criminal offense. See Andrews v. Commonwealth, 312 Ky. 677, 229 S.W.2d 311 (1950). Construing the statute literally, a person addicted to narcotics commits a crime the moment he sets foot within the state, even if he comes here for hospitalization and treatment. So does a person who becomes addicted innocently through medical treatment. Presumably, the addict could be prosecuted and jailed an unlimited number of times for the same addiction. The Robinson decision leaves no alternative but to declare KRS 218.250 invalid. The appropriate method of amendment is by direct legislative action.

 "The broad power of a State to regulate the narcotic drugs traffic within its borders is not here in issue. More than forty years ago, in Whipple v. Martinson, 256 U.S. 41, 41 S.Ct. 425, 65 L.Ed. 819, this Court explicitly recognized the validity of that power: 'There can be no question of the authority of the state in the exercise of its police power to regulate the administration, sale, prescription and use of dangerous and habit-forming drugs * * *. The right to exercise this power is so manifest in the interest of the public health and welfare, that it is unnecessary to enter upon a discussion of it beyond saying that it is too firmly established to be successfully called in question.' 256 U.S. at 45, 41 S.Ct. at 426.

"Such regulation, it can be assumed, could take a variety of valid forms. A State might impose criminal sanctions, for example, against the unauthorized manufacture, prescription, sale, purchase, or possession of narcotics within its borders. In the interest of discouraging the violation of such laws, or in the interest of the general health or welfare of its inhabitants, a State might establish a program of compulsory treatment for those addicted to narcotics.

Such a program of treatment might require periods of involuntary confinement. And penal sanctions might be imposed for failure to comply with established compulsory treatment procedures. Cf. Jacobson v. Massachusetts, 197 U.S. 11, 25 S.Ct. 358, 49 L. Ed. 643. Or a State might choose to attack the evils of narcotics traffic on broader fronts also—through public health education, for example, or by efforts to ameliorate the economic and social conditions under which those evils might be thought to flourish. In short, the range of valid choice which a State might make in this area is undoubtedly a wide one, and the wisdom of any particular choice within the allowable spectrum is not for us to decide." Robinson v. State of California, 370 U.S. 660, at pp. 664–665, 82 S.Ct. 1417 at pp. 1419–1420, 8 L.Ed.2d 758 at pp. 761–762 (footnotes omitted).

The law is so certified.