In the Matter of the NARCOTIC ADDICTION CONTROL COMMISSION, Appellant-Respondent. PAUL JAMES, an Alleged Narcotic Addict, Respondent-Appellant.

First Department, December 19, 1967.

*Maria L. Marcus* of counsel (*Samuel A. Hirshowitz* with her on the brief; *Louis J. Lefkowitz, Attorney-General*), for appellant-respondent.

*William E. Hellerstein* of counsel (*Mary B. Tarcher,* attorney), for respondent-appellant.

RABIN, J. This appeal brings up for consideration the constitutionality of section 206 of the new Mental Hygiene Law enacted in 1966, which provides for the compulsory treatment of narcotic addicts.

This proceeding was initiated by the petition of the mother of Paul James, the alleged addict. Based upon that petition, and pursuant to the relevant sections of the act, a warrant for the apprehension and detention of James was issued. (Mental Hygiene Law, § 206, subd. 2, pars. a and c.) In accordance with the mandate of the warrant, and on May 2, 1967, James was brought to the Edgecombe Reception Center for a medical examination. Subsequent to such examination, and on May 5, James was brought to court as required by the Mental Hygiene Law (Mental Hygiene Law, § 206, subd. 2, par. c). He was advised of his constitutional rights, counsel was assigned, and pursuant to James' request, a hearing was set for May 10. The hearing was subsequently adjourned to May 15. After the hearing an order was entered at Special Term certifying him to the care and custody of the Narcotic Addiction Control Commission. (Mental Hygiene Law, § 206, subd. 4, par. c.) Pursuant to the provisions of the Mental Hygiene Law, and upon application by James, a second hearing was had, this time with a jury. On July 31 the jury rendered a verdict that James was a narcotic addict. James was then recommitted to the care and custody of the commission, subject to the trial court's decision on the constitutionality of the procedures followed.

Thereafter, the court ordered the addict released, holding unconstitutional section 206 of the act, which provides that upon the alleged addict's apprehension he may be brought immediately to the reception center for physical examination, rather than directly before the court where he could have been advised of his constitutional rights, and could have been assigned counsel if he had none. Both parties appeal from the order.

There is no necessity to refer to the long history of society's attempt to find some solution to the problem of narcotic addiction and its resultant by-products. It might be sufficient at this point simply to refer to the findings of the Legislature which served as a foundation for the enactment of this new legislation. The Legislature found, among other things, that " addicts are estimated to be responsible for one-half of the crimes committed in the city of New York alone and the problem of narcotic addiction is rapidly spreading into the suburbs and other parts of the state.'' (Mental Hygiene Law, § 200, subd. 2.)

We need not comment upon the import of this ominous finding, or of the necessity for society to make every effort to meet the problem presented.

The Legislature found further that the situation created a "threat to the peace and safety of the inhabitants of the state". (§ 200, subd. 2.) Moreover, it stated that a "comprehensive program of compulsory treatment of narcotic addicts is essential to the protection and promotion of the health and welfare of the inhabitants of the state". (Mental Hygiene Law, § 200, subd. 2.)

Such a program has been sanctioned by the United States Supreme Court in the case of *Robinson* v. *California* (370 U. S. 660, 665). There the court stated that a "State might establish a program of compulsory treatment for those addicted to narcotics. Such a program of treatment might require periods of involuntary confinement." That statement was made in connection with the declaration of the unconstitutionality of a California penal statute, which in effect made it a criminal offense for one merely to be an addict. Of course, the statute we are considering is nowise penal in nature.

In view of the finding of the Legislature that the narcotic problem presents a grave danger to society, and in view of its finding that a program of compulsory treatment is needed for the protection of society as well as for the promotion of the welfare of the individual and, further, considering the express approval of the United States Supreme Court with respect to such a program, we hold that the 1966 amendments to the Mental Hygiene Law, with respect to the treatment and detention of narcotic addicts, were a valid and proper exercise of the State's police power.

While it might be true that the statute impinges upon the civil rights of one who is apprehended, yet in almost every case where the State exercises its police power in an attempt to meet and cure a condition that is found to be dangerous to society as a whole, there is some impingement on civil rights. The problem presented is one of balancing the interest of society with the rights of the individual. If the State acts reasonably in the exercise of its power and does not go beyond what is necessary to meet the condition presented, then we may say that its action may be sustained from a constitutional standpoint. The legislative finding, as indicated, reveals a serious threat and danger to society and we believe that the Legislature did not intrude upon the civil rights of individuals unreasonably in its attempt to meet and cure the situation.

In the case before us, Trial Term directed its attack solely against those provisions of section 206 which direct that the

alleged addict, after apprehension, be taken for medical examination prior to his appearance in court for a hearing. While it might be that it would have been wiser and preferable for the Legislature to have made provision for an alleged addict to be taken to a Judge immediately upon his apprehension, we do not think that the provision complained of violates the constitutional rights of one so apprehended.

It should be noted that the warrant authorizing apprehension of an alleged addict may be issued only after a Judge or Justice has examined the petition and determined that there are reasonable grounds to believe that the person on whose behalf the application is made is a narcotic addict. (Mental Hygiene Law, § 206, subd. 2, par. a.)*

Since the Judge or Justice must be satisfied on the facts presented with the necessity of issuing a warrant, such apprehension does not deprive the addict of his liberty without due process. In this respect the procedure authorized by the act is similar to that where an ordinary warrant of arrest is issued by a Judge.

We can see no prejudice to the alleged addict by the provision that he be brought for medical examination prior to a hearing. Indeed, such hearing would serve no useful purpose unless a medical examination was first had to provide the medical evidence necessary to determine whether or not the alleged addict should be further detained. In this respect we have ample precedent under our laws, which provide for the detention — preliminary to a court hearing — for medical examination of one who is deemed to be mentally ill (see Mental Hygiene Law, § 72). Moreover, should an alleged narcotic addict be brought to court immediately upon apprehension, there is little that the court would be able to do except to first direct that he undergo a medical examination.

Of course, it could be said that if he were brought to court immediately, he then could be advised of his rights and have counsel assigned to him. But failure to have done so did not in any way prejudice the alleged addict. If, as the result of the failure to assign counsel, some of his rights were irreparably lost to him, then perhaps the failure to do so could have been deemed a fatal defect which would warrant his release. How-

---

* The statute provides initially for the issuance of an order to be served upon the alleged addict directing him to appear for examination. However, if a Judge or Justice determines that the alleged addict "would not comply with any such order, a warrant may issue in lieu" thereof.

ever, none of his rights were lost, since the assignment of counsel, after his medical examination, assured him every opportunity to assert any and all of his constitutional rights that would be appropriate in the circumstances. (See *Canizio* v. *New York,* 327 U. S. 82; *People* v. *Combs,* 19 A D 2d 639; *People* v. *Dolac,* 3 A D 2d 351, affd. 3 N Y 2d 945.) Even if his initial appearance and detention could be considered unlawful, the subsequent proceedings were proper and may stand (see *Frisbie* v. *Collins,* 342 U. S. 519).

Furthermore, if indeed there were any defect in not assigning counsel prior to the alleged addict's medical examination — and we think there was none — there was no justification to release him, because with the protection of counsel, and in accordance with the provisions of the law, he was indeed found to be a narcotic addict, first by a court sitting alone, and again at a trial with a jury. To do so would be allowing at large one who the Legislature states is a danger to society.

It is urged that in this case the alleged addict was indeed prejudiced for he made statements during the period of his examination, which were improperly admitted in evidence during the subsequent hearings. However, these statements were not of a nature that would abridge the alleged addict's rights against self incrimination. Indeed, section 206-b of the Mental Hygiene Law provides that none of the " facts or proceedings relating to the admission, certification or treatment of any such narcotic addict be used against him in any proceeding in any court, other than a proceeding pursuant to the provisions of this article."

Moreover, there can be no question, if we are to have any system of compulsory treatment at all, that a medical examination must be had, whether before or after assignment of counsel — and no medical examination can be complete, or can serve any useful purpose unless the alleged addict responds to questions that are essential in order to make a proper diagnosis. Consequently, I fail to see how the taking of these statements, without advice of counsel, and the use of them during the hearings, prejudice or violate the rights of the alleged addict in any manner whatsoever.

In the instant case, it is our conclusion that the evidence overwhelmingly established James as an addict within the meaning of the law. Even if we were to eliminate evidence, which it is claimed was unlawfully obtained, there is sufficient remaining to strongly support the conclusion reached by both Judge and jury, i.e., that James is a narcotic addict.

However, in no event should the act in its entirety fall. The act under consideration has a severability clause. Consequently,

the act should be permitted to stand if after excising the portion of the act deemed to be unconstitutional, the remainder carries out the objectives of the Legislature. (*Schieffelin* v. *Goldsmith,* 253 N. Y. 243.) If it should be held that the provision for medical examination, prior to appearance before a Judge, be unconstitutional, the balance of the act could be saved by excising such provision and providing for appearance before the Judge issuing the warrant, immediately upon apprehension. That can be done by striking from section 206 (subd. 2, par. c) the words '' to a specified place for an immediate medical examination, and (iii) to bring such alleged narcotic addict immediately after conclusion of such examination ''. By so doing, that section of the statute will then read as follows: '' A warrant issued pursuant to this subdivision shall be directed to any peace officer in the state commanding such peace officer (i) to take the alleged narcotic addict into custody, (ii) to deliver such alleged narcotic addict forthwith before the judge or justice issuing the warrant ''. Similar corrections could be made in any other portion of the act where it is deemed necessary.

As indicated, while it would have been wiser for the Legislature to have made provision for the immediate appearance of the alleged addict before the court after apprehension, the failure to do so does not constitute an infirmity as to declare the act to be unconstitutional—particularly in the light of the afforded constitutional protection by way of trial before court and jury with the help and advice of counsel.

Accordingly, the order and judgment of the trial court should be reversed and James should be returned to the custody of the Narcotic Addiction Control Commission for such treatment as the statute provides. Settle order.

CAPOZZOLI, J. (concurring in the result). I agree with Judge STEVENS that it would be '' constitutionally correct and infinitely more desirable '' that the warrant and the person taken into custody pursuant to it be taken before the Judge who issued the warrant before bringing such person to the medical facility. In fact, I am convinced that the failure to do so was a violation of the respondent's constitutional rights, and I disagree with the majority insofar as it concludes that there was no such violation.

The question is not whether there were sufficient facts before the Judge to justify the issuance of the warrant but, rather, whether the alleged addict, the respondent herein, once he was taken into custody under that warrant, should have been brought before the Judge who issued the warrant prior to delivering him

to the medical facility. In that manner the respondent, if he had anything to say concerning his apprehension under the warrant, could address a judicial officer rather than appeal to a nonjudicial officer in the medical facility to which he was taken.

While I have concluded that there was a violation of the respondent's rights by the failure to have arraigned him before the Judge who issued the warrant before delivering him to the hospital facility, I am nevertheless convinced that the failure to do so did not contribute in any way to the jury's finding that he is a narcotic addict. The evidence on this issue is overwhelming against him. Therefore, the failure to have arraigned him before the Judge who issued the warrant, under all the circumstances of this case and considering the totality of the evidence below, is an error which can be deemed harmless and does not call for interfering with the verdict of the jury. In this connection the following quotation from *Chapman* v. *California* (386 U. S. 18, 22) is particularly pertinent: "We conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." Later, at page 24 of the same case, there is the following: "We, therefore * * * hold * * * that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."

I am convinced beyond a reasonable doubt that, if the respondent had been brought before the Judge who issued the warrant prior to being confined to the medical facility to which he was brought, it would have made no difference whatever to the final result, in view of the evidence presented to the court and jury.

I do not believe that statements made by the respondent to the doctor who testified are subject to the rule established in *Miranda* v. *Arizona* (384 U. S. 436). It must be remembered that the purpose of the statute under consideration is not to punish those who come within its terms as narcotic addicts, but, rather, to concentrate on curing them. It is purely a civil proceeding and the rules applicable to the enforcement of criminal law should not apply to this type of proceeding.

For the reasons stated above I concur in the result reached by the majority.

STEVENS, J. (dissenting). I dissent and vote to affirm. Under the definition of narcotic addict set forth in the statute (Mental Hygiene Law, § 201, subd. 2) the admissible evidence was clearly insufficient to establish James as an addict. The medical witness

did not distinguish between a user and an addict as defined in the statute. In fact the examining physician considered as an addict an individual who might have a heroin injection once every two months. The medical examination of James, as testified to, was exceedingly brief and the objective findings less than satisfactory to establish that James was a narcotic addict. After being taken into custody James, according to his testimony, was taken first to the police precinct and then to the center for treatment. At no time was he warned of his constitutional rights, and James' testimony is that he " elected to take narcotic treatment as opposed to going to jail." Statements by James to the doctor who testified, and who stood in the place of the State, should not have been received in evidence (*Miranda* v. *Arizona,* 384 U. S. 436; cf. *Matter of Gault,* 387 U. S. 1).

On the broad question of the constitutionality of the statute, adverted to in the majority opinion, it is recognized that a " State in the exercise of its police power [may use its authority] to regulate the administration, sale, prescription and use of dangerous and habit-forming drugs " (*Whipple* v. *Martinson,* 256 U. S. 41, 45, cited in *Robinson* v. *California,* 370 U. S. 660, 664). It may also " establish a program of compulsory treatment for those addicted to narcotics " (see *Robinson* v. *California, supra,* p. 665). The chief objection to the law before us, as presently written, is that it stigmatizes an entire class of persons, addicts, or presumed addicts, and permits their arrest and detention, without providing any constitutional safeguards (see 81 Harv. L. Rev., p. 172 *et seq.,* Supreme Court, 1966 Term) and without the necessity for any showing that they are dangerous to themselves or to society. While the definition of " narcotic addict " may be somewhat vague, it may reasonably be construed so as to endow it with the requisite elements of certainty. Of more concern is the provision that any person, whether from honest belief or insincere and dishonest motives, setting in motion the necessary machinery may cause the apprehension and detention of another who has no immediate recourse to the courts. Such person is taken instead to a medical facility where he may be detained without counsel and, so far as is required under the statute, without compulsory notification of friend or next of kin. While the writ of habeas corpus is not suspended, its possible use under such circumstances is virtually nonexistent or at least the right is deprived of substance and meaning. It would seem constitutionally correct and infinitely more desirable that upon execution of the warrant, such warrant, together with the person of the alleged addict, be returned initially and immediately before the issuing court. It may fairly

be assumed that such court would instruct the alleged addict as to his constitutional rights. At that stage he is exactly what the term implies, one who is believed, or who it is asserted, is an addict.

For the foregoing reasons I dissent and vote to affirm.

Botein, P. J., and Steuer, J., concur with Rabin, J.; Capozzoli, J., concurs in result in opinion; Stevens, J., dissents in an opinion.

Order and judgment reversed, on the law and on the facts, and respondent-cross-appellant is to be returned to the custody of the Narcotic Addiction Control Commission for such treatment as the statute provides. Settle order on notice.