**Raul Herberto ORTEGA, Petitioner,**

v.

**Robert W. RASOR, M.D., Medical Officer in Charge, National Institute of Mental Health, Clinical Research Center, Lexington, Kentucky, Respondent.**

**No. 68–346–Civ–CA.**

United States District Court
S. D. Florida,
Miami Division.

Oct. 15, 1968.

Raul Herberto Ortega, pro se.

William A. Meadows, Jr., U. S. Atty., and Lavinia Redd, Asst. U. S. Atty., Miami, Fla., for respondent.

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

ATKINS, District Judge.

This cause is before the Court pursuant to the petition for writ of habeas corpus filed by Raul Herberto Ortega.

The petitioner filed a petition in this Court on March 25, 1968 pursuant to Title III of the Narcotic Rehabilitation Act of 1966, 42 United States Code, § 3411 et seq. He voluntarily requested the Court to order him civilly committed for treatment of a narcotic addiction. After a hearing, held on March 26, 1968, Raul Herberto Ortega was ordered committed to the custody of the Surgeon General for confinement in a hospital for examination for a period not to exceed 30 days. The Surgeon General was directed to report his findings to the Court in accordance with Section 3413

of the Act. The petitioner at the hearing signed a Waiver of Further Court Appearances wherein he waived his right to return to this Court for a hearing in the event the Surgeon General, after examination, finds that the petitioner is eligible for further hospitalization because he is an addict who is likely to be rehabilitated through treatment. The petitioner further agreed that in such event the Court could enter its order committing him, in absentia and without further hearing, to the care and custody of the Surgeon General for treatment for a period not to exceed six months and such posthospitalization treatment as may be provided for in Title III of the Act. Upon receipt of the report of the examining psychiatrist wherein he recommended treatment, the Court entered its order of confinement. The petitioner now seeks to voluntarily withdraw from his treatment.

Raul Herberto Ortega, in his petition for writ of habeas corpus, asserts the following arguments in support of the issuance of the writ:

1) The Federal Narcotic Rehabilitation Act is unconstitutional because the Congress of the United States cannot deprive a citizen of his liberty when he has not been charged with a crime. Further, Congress does not have the power to prescribe a course of medical treatment for a citizen it will never see.

2) The petitioner at the time of the hearing was under the influence of narcotics. He could not voluntarily enter into any agreement because of his then addiction to narcotic drugs.

3) The petitioner "was deliberately misled, by various authorities, in this Honorable Court, and in the * * * Clinical Research Center, to the effect that he would be detained only thirty days * * * "

The court, having received and considered the response of the government, having reviewed the entire record including the pleadings and the record transcribed at the hearing on the government's petition to show cause why the petition of Raul Herberto Ortega for voluntary civil commitment should not be granted, and being otherwise duly advised in the premises of this action hereby denies and dismisses the petition for writ of habeas corpus.

■ The power of the Congress of the United States to promulgate laws for the betterment of the public health, morals, safety, and welfare is beyond question. Whether or not Congress has acted within its powers depends upon whether or not there is a reasonable nexus between the subject matter of the suspect legislation and the results sought to be achieved. If the answer to this question is "fairly debatable," the legislation must be upheld. Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926).

It cannot be seriously disputed that a proper exercise of the police power underlies the promulgation of Title III of the Narcotic Rehabilitation Act of 1966. Section 3401 of Title 42, United States Code, provides in pertinent part:

§ 3401. Declaration of Policy

It is the further policy of the Congress that certain persons addicted to narcotic drugs who are not charged with the commission of any offense should be afforded the opportunity, through civil commitment, for treatment, in order that they may be rehabilitated and returned to society as useful members and in order that society may be protected more effectively from crime and delinquency which result from narcotic addiction.

The Act further provides:

§ 3411. Definitions

For the purposes of this subchapter, the term—(a) "Narcotic addict" means any individual who habitually uses any narcotic drug as defined by section 4731 of Title 26 *so as to endanger the public morals, health, safety, or welfare,* or who is or has been so far addicted to the use of such

narcotic drugs as to have lost the power of self-control with reference to his addiction. (Emphasis added).

Indicative of the Congressional purpose supporting the enactment of Title III of the Act is the following statement of Mr. Richard A. McGee, administrator of the Youth and Adult Corrections Agency, State of California.

> The active addict is the chief source of the spread of addiction—one addict on the streets will make several new ones in his career. He is the vector of the "disease." 1966 U.S.Cong. & Adm. News, 4251, citing to Hearing, August 12, 1965, 356.

The above statement was submitted to the Congressional committee studying the proposed legislation and it was made a part of the hearings. The Honorable Emanuel Celler, of New York, the chairman of this committee, in testifying in support of this legislation, also stated:

> * * * and addicts breed other addicts. If we can cure an addict, it is the same thing as isolating and curing a carrier of a communicable disease. 1966 U.S.Cong. & Adm.News, 4252, citing to Hearings, July 14, 1965, 57.

This Court is therefore of the opinion that Title III of the Narcotic Rehabilitation Act of 1966 cannot be successfully challenged on the ground that its promulgation was outside the scope of Congressional powers. Judicial precedent, if judicial precedent is needed, does exist.

> There can be no question of the authority of the state in the exercise of its police power to regulate the administration, sale, prescription and use of dangerous and habit-forming drugs * * *. The right to exercise this power is so manifest in the interest of the public health and welfare, that it is unnecessary to enter upon a discussion of it beyond saying that it is too firmly established to be successfully called in question. State of Minnesota ex rel. Whipple v. Martinson, 256 U.S. 41, 45, 41 S.Ct. 425, 426, 65 L.Ed. 819 (1920).

At a more recent date, the Court expressed the view that:

> Such regulation, it can be assumed, could take a variety of valid forms * * * In the interest of discouraging the violation of such laws, or in the interest of the general health or welfare of its inhabitants, a State might establish a program of compulsory treatment for those addicted to narcotics. Such a program of treatment might require periods of involuntary confinement. And penal sanctions might be imposed for failure to comply with established compulsory treatment procedures * * * Robinson v. State of California, 370 U.S. 660, 665, 82 S.Ct. 1417, 1419, 8 L.Ed.2d 758 (1962).

In the case at bar, the Court is not concerned with a situation of compulsory treatment as such. The petitioner, Raul Herberto Ortega, initially instituted the proceeding for his civil commitment with the filing of a petition on his own behalf. The statute involved in this case, because of this difference, finds more support from the above quotation from Robinson v. State of California, supra, than was even involved in the facts of *Robinson.*

Judicial precedent for the result reached in this case also can be found in the decisions of state Supreme Courts. California: In re De La O, 59 Cal.2d 128, 28 Cal.Rptr. 489, 378 P.2d 793 (1963) (compulsory treatment of drug addict), cert. denied, 374 U.S. 856, 83 S.Ct. 1927, 10 L.Ed.2d 1076; In re Butler, 59 Cal. 2d 157, 28 Cal.Rptr. 508, 378 P.2d 812 (1963); cert denied, 375 U.S. 11, 84 S.Ct. 65, 11 L.Ed.2d 40. Florida: Moore v. Draper, 57 So.2d 648 (Fla.1952) (compulsory isolation of persons afflicted with tuberculosis). New York: Matter of Narcotics Addict Control Commission, 1 Cr.L. 2228 (N.Y.Sup.Ct., 1967). In each instance, the state supreme court sustained the state prototype, except for a compulsory feature, of the Narcotic Rehabilitation Act of 1966.

■ The petitioner asserts that Congress does not have the power to prescribe a course of medical treatment for a citizen it will never see. The Court is in doubt about what is precisely meant by this assertion. The record does reveal that the petitioner was ordered deported from the United States to Cuba on January 25, 1965. A detainer notice was filed with the United States Public Health Service Hospital, Lexington, Kentucky, after Mr. Ortega was civilly committed. The United States Department of Justice, Immigration and Naturalization Service, however, subsequently advised the assistant United States Attorney representing the Government in these proceedings that the detainer filed with the Health Service would be lifted. The aforesaid communication has been forwarded to the Court. The Court can perceive no valid legal reason why Mr. Ortega is ineligible for treatment under the Act simply because there is an outstanding order of deportation. The matter is entirely between the petitioner and the Government. It would appear that the only party in a position to complain would be the United States Department of Justice.

■ The last assertions of the petitioner are similarly lacking in merit. The Court, having independently recollected the hearing held pursuant to Mr. Ortega's petition for civil commitment, which hearing was brought before the Court by the government, and having reviewed the transcript of that hearing, is convinced that the petitioner acted of his own volition in requesting civil commitment and not because he was under the influence of narcotics and did not know what he was doing. The transcript of the hearing as well as the petition for voluntary civil commitment and Waiver of Further Court Appearance, both signed by Mr. Ortega established without a doubt that Mr. Ortega was fully apprised of his responsibilities under the Act and in fact understood those responsibilities. The Court will not permit the petitioner to terminate his treatment simply because the road to recovery is bumpy.

The court, for the above reasons, hereby

Orders and adjudges that the petition for writ of habeas corpus filed by Raul Herberto Ortega be and the same is hereby denied and the petition be and the same is hereby dismissed.

## ORDER GRANTING REQUEST FOR DISCHARGE OF PATIENT

This cause came on to be considered pursuant to the request of the Surgeon General, contained in a letter to the Court dated October 4, 1968, for the entry of an order discharging Raul Herberto Ortega from the custody of the Surgeon General.

■ The petitioner was ordered committed to the custody of the Surgeon General for treatment as a narcotic addict pursuant to his voluntary petition for civil commitment. Title III of the Narcotic Rehabilitation Act of 1966, 42 U.S.C. § 3411. The letter of the Surgeon General reveals the following uncooperative conduct of the petitioner which necessitates the granting of the request made by the Surgeon General:

1) He has refused to become involved in his prescribed treatment program, rejecting treatment whenever it has been offered.

2) He has avoided participation in his group psychotherapy sessions.

3) Overall, his conduct has been characterized by defiance and a desire to be released early from the treatment program.

4) On September 23, 1968, Mr. Ortega was found under the influence of narcotic drugs a few hours after the hospital infirmary had been broken into by armed persons, believed to be patients, who had stolen some narcotic drugs. Mr. Ortega was uncooperative and defiant when questioned about this episode, and consequently, it was found necessary to segregate him from the general patient population to prevent his disruption of the treatment program of other patients.

The Surgeon General and his staff have concluded that because of Mr. Ortega's

conduct, he is not likely to be rehabilitated through continued treatment under Title III of the Act.

The Court hereby:

Orders and adjudges: (1) that the petitioner Raul Herberto Ortega be discharged from the custody of the Surgeon General, effective October 17, 1968. (2) The Surgeon General shall make appropriate arrangements for the return of the subject to this Court by the United States Marshal. (3) The United States Marshal, upon the return of the subject to this district shall so notify the Court in order that the Court may schedule a hearing for the purpose of discharging the petitioner or taking other appropriate action herein.