Willie YANEZ, Petitioner-Appellant,

v.

Levi ROMERO, Warden,
Respondent-Appellee.

No. 79–1003.

United States Court of Appeals,
Tenth Circuit.

Argued Feb. 14, 1980.

Decided April 7, 1980.

Tova Indritz, Asst. Federal Public Defender, Albuquerque, N. M., for petitioner-appellant.

Andrea R. Buzzard, Asst. Atty. Gen., Santa Fe, N. M. (Jeff Bingaman, Atty. Gen., Santa Fe, N. M., with her on brief), for respondent-appellee.

Before McWILLIAMS, DOYLE and McKAY, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This cause is before us on writ of habeas corpus which challenges a state court conviction of guilty in a criminal case. It is brought pursuant to 28 U.S.C. § 2254. The embattled incident is an arrest which was made in a service station restroom by New Mexico police. The police had observed the defendant and another person enter the restroom and had followed them into the room by bursting into it where they saw a hypodermic needle which gave the appearance of having been used. There were fresh needle marks on the arm of the petitioner. Following their having made observations, petitioner was arrested and transported to a hospital and was then asked to give a urine sample. He refused, and the allegation is that he was threatened with being catheterized in order to secure the sample. He acknowledged that he submitted to the giving of the sample, but did so as a result of the threat. The result of the testing of the sample was positive. The petitioner was then charged with the unlawful possession of morphine. He was found guilty of unlawful possession of morphine and he sought relief in the U.S. District Court for New Mexico. This was denied, and it is this judgment which he seeks to reverse.

The cause was appealed from the state district court to the New Mexico Supreme Court. The conviction was there affirmed, and after exhausting state remedies the present petition for writ of habeas corpus was instituted. The federal trial court denied the petitioner's request for an evidentiary hearing and dismissed the petition.

\* \* \* \* \* \*

The contentions of the petitioner are as follows:

1. That the actual conviction was that of being a narcotics addict in that the morphine that he was convicted of possessing was found solely in his body fluids. The argument is that this conviction is in conflict with *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962).

2. That the search of his body by means of the urine sample was under threat of catheterization, and this constituted a violation of his constitutional rights.

3. That the court below erred in denying his motion for an evidentiary hearing in order to determine the circumstances under which the urine sample was taken.

## I.

■ Was the conviction violative of *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), in that the defendant was in effect convicted of being an addict? Our answer is no.

Defendant contends that there was no evidence of his possession of narcotics other than that which established that he had morphine or heroin in his body. An effort was made by counsel (for the defendant) to have an evidentiary hearing in order to establish that the defendant was an addict at the time. This was denied.

The California statute under which Robinson was convicted provided that "No person shall use, or be under the influence of, or be addicted to the use of narcotics, excepting when administered by or under the direction of a person licensed by the State to prescribe and administer narcotics." The statute also requires the defense to prove that the case comes within the exception.

The evidence established in *Robinson* that the subject showed evidence of being an addict and that he had scar tissue and discoloration on the inside of his right arm. Also, the arm showed numerous needle marks and a scab just above the crook of the elbow. The Supreme Court recognized the breadth of the power of a state to regulate the drug traffic, a power which

had been outlined in *Whipple v. Martinson*, 256 U.S. 41, 41 S.Ct. 425, 65 L.Ed. 819 (1921). The Court concluded:

This statute, therefore, is not one which punishes a person for the use of narcotics, for their purchase, sale or possession, or for antisocial or disorderly behavior resulting from their administration. It is not a law which even purports to provide or require medical treatment. Rather, we deal with a statute which makes the "status" of narcotic addiction a criminal offense, for which the offender may be prosecuted "at any time before he reforms." California has said that a person can be continuously guilty of this offense, whether or not he has ever used or possessed any narcotics within the State, and whether or not he has been guilty of any antisocial behavior there.

370 U.S. at 666, 82 S.Ct. at 1420. The possession of narcotics as a crime was held to be a valid approach and was distinguished. Addiction, on the other hand, was recognized as a disease which could not be the subject of prosecution; that the effort to prosecute violated the Eighth and Fourteenth Amendments.

In *Powell v. Texas*, 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968), the Supreme Court distinguished the situation in which the accused was not being convicted of the status of chronic alcoholic but rather was being convicted for drunkenness in public; that the *Robinson* doctrine had no application to this. Texas, it was held, had the authority to define the specific offense of drunkenness in public "which offends the moral and esthetic sensibilities of a large segment of the community. This seems a far cry from convicting one for being an addict, being a chronic alcoholic, being 'mentally ill, or a leper . . . .' Id., [370 U.S.] at 666 [82 S.Ct. at 1420]." 392 U.S. at 532, 88 S.Ct. at 2154.

A reading of the decision in *Robinson* and that in *Powell* makes clear the proposition that the New Mexico statute was within the scope of the state's power, was valid on its face and was not invalid as applied.

## II.

Was the obtaining of the urine sample an unlawful search or a deprivation of due process under *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952)?

The facts in *Rochin* were gross and extreme. The police forcibly entered the home of the accused without a warrant. When the officers entered the bedroom, they found the defendant partly dressed on the side of the bed on which his wife was lying. The officers saw some capsules on the bedside stand and asked "Whose stuff is this?" Thereupon, Rochin seized the capsules and put them into his mouth. The three officers jumped upon him and attempted to forcibly extract them. The force that they applied was not productive. He was then handcuffed and taken to a hospital where one of the doctors forced an emetic solution through a tube into Rochin's stomach against his will. The stomach pumping produced vomiting, and in the vomited matter the two capsules were found. These proved to contain morphine. At the trial the chief evidence against the accused was the two capsules. He was convicted and the conviction was affirmed in the intermediate state appellate court. The Supreme Court of California affirmed, and the cause proceeded to the Supreme Court of the United States. The Supreme Court, in a classic opinion of Justice Frankfurter, condemned the police actions, saying that "This is conduct that shocks the conscience." *Id.* at 172, 72 S.Ct. at 209.

The petitioner maintains here that this was a violation of the Fourth and Fourteenth Amendments. At the same time, reliance is placed upon the Supreme Court's decision in *Rochin, supra*. It is possible that the conduct here is a violation of the Fourth-Fourteenth Amendments, but it is also a possible violation of the due process clause of the Fifth Amendment. That was the basis for the Supreme Court's ruling in *Rochin*. It was the ruling that the conduct shocked the conscience that was responsible for the Supreme Court's ruling. The opinion added:

Illegally breaking into the privacy of the petitioner, the struggle to open his mouth and remove what was there, the forcible extraction of his stomach's contents—this course of proceeding by agents of government to obtain evidence is bound to offend even hardened sensibilities. They are methods too close to the rack and the screw to permit of constitutional differentiation.

342 U.S. at 172, 72 S.Ct. at 209.

Our view is that the stronger argument for exclusion is the Fifth Amendment prohibition which is somewhat broader than the limitation provided by the Fourth Amendment. The Supreme Court was moved by the offense to human dignity and the conflict with ordered liberty. This does not say that exclusion of evidence that resulted from the *Rochin* facts governs the outcome in the present case. Our determination that it is primarily a due process contention serves to offset the state's argument that a review is precluded by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). *Stone* had been a murder case which resulted in a conviction in the California courts. The important evidence was a revolver found on the person of the accused when he was arrested for violating a vagrancy ordinance. The trial judge rejected the respondent's contention that the testimony should have been excluded because the ordinance was unconstitutional and the arrest was invalid. The appellate court affirmed, holding that it was unnecessary for illegality of the arrest to be determined since it was ruled that receipt of the revolver was harmless. The respondent then applied for habeas corpus in the federal district court. The judge there ruled that the arresting officer had probable cause and that even if the ordinance was unconstitutional, the deterrent purpose of the exclusionary rule was not such that it had to be applied to bar admission of the fruits of a search incident to an otherwise valid arrest. The Court of Appeals reversed and held that receipt of the evidence was not harmless error. The Supreme Court of the United States reversed the Court of Appeals' ruling and held that where the state has provided an opportunity for full and complete litigation of a Fourth Amendment

claim, a state prisoner is not entitled to habeas corpus relief growing out of an alleged violation of the Fourth and Fourteenth Amendments.

In ruling that search and seizure claims were not cognizable in § 2255 proceedings, the Court balanced the unlawful police activities against the tendency to sometimes free the guilty as a consequence of the collateral attack and exclusionary rule. The Court said:

> In sum, we conclude that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial. In this context the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force.

428 U.S. at 494–495, 96 S.Ct. at 3052–3053.

We call attention to the ruling of the Supreme Court in *Stone v. Powell, supra,* because it precludes review of this case if it is judged as a Fourth Amendment violation, but, as is pointed out above, it is unnecessary to consider it as a search and seizure problem since there exists at least some possibility that the conduct of the state officers here constituted a deprivation of the due process rights of the accused.

### III.

■ Does the conduct of the officers in obtaining the evidence in the present case bring it within the standards of *Rochin v California, supra*?

Our conclusion is that it does not.

The arrest in the case before us was not without probable cause. The defendant and his companion were under surveillance when the officers viewed them entering the restroom of a service station. The arrest followed and there was reason to conclude that the hypodermic needle which gave the appearance of having been used was in plain view. Also, there were needle marks on the arm of the petitioner. The arrest

and the transportation to the hospital together with the request for urine sample followed. It will also be recalled that actual force was never used. How much legal difference that produces is highly questionable, but if penetration of the person is made, it unquestionably causes the facts to be more aggravated.

It is to be gleaned from the evidence that the practice of either threatening to use a catheter or the actual use of it is not an infrequent occurrence in New Mexico. While this may not be shocking to the extent that it was in the *Rochin* case, it is nevertheless an undesirable practice which is ultimately likely to produce a fact situation which will be ruled shocking and unlawful. We are not, however, justified in reaching this conclusion in the present case because of the fact that the *Rochin* decision pretty much stands by itself and is limited to its particular facts. This is not to say that you would have to have a stomach pump in order to satisfy the requirements, but there would have to be something akin to it plus gross circumstances equal to the forceful entry into the home and bedroom of the defendant and the forceful effort to obtain the evidence. We do not say that the Supreme Court's decision in *Rochin* has eroded, but we do say that it has been applied in a positive way quite infrequently.

The state relies on *Breithaupt v. Abram,* 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957), in which evidence obtained as a result of a blood test by a skilled technician was held to be admissible because it did not shock the conscience nor did it amount to brutality. The state also relied on *United States v. Harrison,* 432 F.2d 1328 (D.C.Cir. 1970). There officers who were armed with a search warrant entered the defendant's dwelling and witnessed the defendant in the act of swallowing an envelope which contained 10 heroin capsules. The officers grabbed the defendant by the throat and succeeded in preserving the evidence by pressing hard in the throat region. This effectively prevented the swallowing. The D.C. Circuit distinguished *Rochin,* saying that in the case before the court the officers acted in an effort to prevent the destruction of the evidence.

The case of *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), is also considered significant by New Mexico. Petitioner was there hospitalized following an automobile accident. The officer smelled liquor on his breath and observed other symptoms of his drunkenness. He was arrested and was advised of his right to counsel. At the officer's direction, the physician took a blood sample despite Schmerber's refusal to consent thereto. The report was positive as to intoxication. This evidence was received at the trial in support of the charge of driving while intoxicated. Conviction resulted. The Supreme Court approved the unconsented-to withdrawal of blood and agreed that it was an invasion of his right to be free from unlawful searches and seizures, but said that it was not a violation of his right because there existed probable cause for the arrest, and the arrest furnished a valid basis for requiring the submission to a blood test. Besides, a warrant was impossible because of lack of time. The Court concluded that the test which served to measure the blood alcohol level was reasonable and imposed no risk, trauma or pain because it was performed in a reasonable manner by a physician.

Based upon *Breithaupt v. Abram, supra,* the Court concluded that there was no due process violation:

> Not even a shadow of testimonial compulsion upon or enforced communication by the accused was involved either in the extraction or in the chemical analysis. Petitioner's testimonial capacities were in no way implicated; indeed, his participation, except as a donor, was irrelevant to the results of the test, which depend on chemical analysis and on that alone. Since the blood test evidence, although an incriminating product of compulsion, was neither petitioner's testimony nor evidence relating to some communicative act or writing by the petitioner, it was not inadmissible on privilege grounds.

384 U.S. at 765, 86 S.Ct. at 1832.

The Court also rejected the contention of the accused that the chemical analysis constituted an unlawful search and seizure. Four Justices dissented. Interestingly, and perhaps significantly, the majority opinion did not mention *Rochin*. It was very likely the lack of force and brutality which was instrumental in the Court's ruling.

This same approach was used in *Irvine v. California*, 347 U.S. 128, 74 S.Ct. 381, 98 L.Ed. 561 (1954), where the defendant's home was entered by way of a key that was made by a locksmith. This was all accomplished without a search warrant or other process. The officers had set up listening devices and had obtained incriminating statements. The Court distinguished *Rochin* and *Wolf v. Colorado*, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949). It was admitted that the facts in *Irvine* were obnoxious (just as they are here), but it was said that they did not "involve coercion, violence or brutality to the person, but rather a trespass to property, plus eavesdropping." 347 U.S. at 133, 74 S.Ct. at 383. Here, of course, we do have something in the nature of coercion, although there is no actual violence or brutality present.

\* \* \* \* \* \*

Very little help is derived from the numerous other recent cases dealing with searches for narcotics in body cavities. *See, e. g., United States v. Shields*, 453 F.2d 1235 (9th Cir. 1972); *United States v. Mastberg*, 503 F.2d 465 (9th Cir. 1974). Both of these cases deal with border searches. It is necessary to show preliminarily that there is a "clear indication" of the presence of narcotics. *But, see, Wolfish v. Levy*, 573 F.2d 118 (2d Cir. 1978), wherein prison searches of the privates of the inmates were found to be shocking under the *Rochin* doctrine.

Had there been an actual use of the equipment (the catheter) which the officers threatened to use, the problem would be much closer to that which was present in *Rochin*. Thus, we consider the forceful use of the catheter to obtain a body fluid to be a gross personal indignity. We are mindful, however, that probable cause did exist here and was not present in *Rochin*. Also, the threat is not quite the same as the

actual invasion. It can, of course, be argued that it is not materially different.

The surprising dearth of authority on this subject is apparent from some of the treatise material. *See, e. g.,* 5 Orfield, *Criminal Procedure under the Federal Rules* § 41.28, and the pocket supplement to this discussion. Additional cases are collected in Annot., 16 L.Ed.2d 1341, § 5, *Search for foreign matter concealed internally,* and in 22 L.Ed.2d 909.

It is our conclusion that although *Rochin* continues to be recognized for its holding on the facts and on its several elements, it cannot be said to be flourishing as an authority in that there has not been any tendency to apply it in any general way. On the other hand, it has not withered either. But, it does not extend to the case at bar.

### IV.

Petitioner's final contention is that the trial court was in error in refusing to grant an evidentiary hearing.

There is an ample presentation of the facts in the record which was developed in the trial court, and the matters presented to the trial judge in this case were issues of law. Therefore, we do not see that it was necessary to take evidence even on the *Robinson v. California, supra,* issue in view of the conclusion which we reached in part I of this opinion.

Accordingly, the judgment of the district court is affirmed.

McKAY, Circuit Judge, dissenting:

Having exercised the duty of review which the Due Process Clause "inescapably imposes upon this [c]ourt," I have concluded that the police procedures used here "offend those canons of decency and fairness" which ought to govern our conduct, especially toward one who is suspected of no more than seeking surcease by ingesting a depressant not totally unlike those commonly approved in our society. *Rochin v. California,* 342 U.S. 165, 169, 72 S.Ct. 205, 208, 96 L.Ed. 183 (1952) (quoting *Malinski v.*

*New York,* 324 U.S. 401, 416–17, 65 S.Ct. 781, 788–89, 89 L.Ed. 1029 (1945)). Our duty is to examine "the whole course of the proceedings," not just isolated portions. *Id.*

Here the police without warrant followed the defendant into a restroom, seized him, hauled him away and demanded a urine sample under the threat of forced catheterization.[1] That citizens, as part of such indignities, may be forced to yield to police demands under the threat of the final painful act offends my sense of decency as much as does an actual thrust into a body cavity. It would astound me if our law approved official threats of the type of indecencies condemned in *Rochin,* while disapproving only actual consummation of the threatened indignities.

---

1. Since the police say they took the defendant to a hospital, I simply would not credit any other view than that the threat occurred. A "request" for a truly voluntary urine sample does not require hospital facilities.