Raymond E. BEAVERS, Appellant,

v.

STATE of Missouri, Respondent.

No. KCD 26609.

Missouri Court of Appeals,
Kansas City District.

March 3, 1975.

---

Hill, McMullin & Wilson, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Charles B. Blackmar, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

Before SWOFFORD, P. J., and WELBORN and HIGGINS, Special Judges.

ANDREW JACKSON HIGGINS, Special Judge.

Appeal from denial, after evidentiary hearing, of motion under Rule 27.26, V.A.M.R., to vacate and set aside judgment and sentence to six years' imprisonment for sale of restricted drugs.

On August 14, 1970, Raymond Ellis Beavers pleaded guilty to a charge of selling lysergic acid diethylamine (LSD). Chapter 195, RSMo 1969, V.A.M.S. Sentencing was deferred for a presentence investigation; and defendant was released on his own recognizance pending receipt of the presentence investigation report and to permit him to petition the United States District Court for examination and treatment under the federal Narcotic Addict Rehabilitation Act of 1966. At his request, he was committed by the United States District Court for the Western District of Missouri to a Public Health Service Hospital in Fort Worth, Texas, for treatment where he remained for six or seven months.

Following his treatment at Fort Worth, defendant was present in the circuit court where, on March 15, 1971, he received the sentence in question.

On or about October 11, 1971, Raymond Ellis Beavers filed his motion under Rule 27.26, V.A.M.R., which, as amended prior to and at the hearing, asserted as grounds for relief:

8(c). That movant's plea was involuntary because his counsel led him to honestly believe that if he entered a plea of guilty he would be placed under the NARA program and not sentenced to the penitentiary.

8(d). The court exceeded its jurisdiction by suspending the imposition of sentence prior to releasing the movant under conditions of narcotic addiction of NARA, Title 42 U.S.C. § 3401, and not reaching final judgment prior to release and acceptance under the provisions of said Act, and as a consequence the movant was denied due process and equal protection of the law contrary to the 14th Amendment of the Constitution and Article I, Sections 2 & 3 of the Missouri Constitution 1945, Revised 1969, V.A.M.S.

Hearing on the motion began December 3, 1971, at which time Raymond Ellis Beavers testified in his own behalf, and a transcript of the plea proceedings of August 14, 1970, was made available. Inasmuch as one of movant's allegations and much of his testimony represented that his attorney at the time of his plea, Mr. Darragh K. Kasakoff, had misled him as to the consequences of his plea, the court continued the hearing to permit movant to determine whether he wished to call Mr. Kasakoff as a witness or offer his deposition in support of his allegations.

On May 15, 1972, the hearing was resumed at which time movant's counsel, Mr. J. Arnot Hill, advised the court that Mr. Kasakoff now practiced law in Massachusetts; that Mr. Kasakoff responded to his letter and denied he had made any promise to his client that he would not receive a penitentiary sentence; that he forwarded a copy of Mr. Kasakoff's letter to movant; that movant advised he considered Mr. Kasakoff's testimony of no value and that he had no further evidence to offer.

On February 8, 1973, the court filed findings and conclusions, some of which determined movant's lack of credibility, and overruled the motion.

The transcript of plea proceedings shows: that Raymond Ellis Beavers, age 39, possessed of a tenth-grade education with ability to read, write, and understand the English language, was identified as the defendant in a charge of selling restricted drugs; that he was pleading guilty for the reason that he was guilty and no other; that he had been advised by Mr. Kasakoff of his rights to a speedy trial, to confront and cross-examine any witnesses against him, and not to testify; that he was asking the court's permission to waive all such constitutional rights and enter a guilty plea; that he declared freely and voluntarily and of his own free will that he was guilty of the charge; that he was not induced to plead guilty by any threats, promises, offers, or rewards; that he understood the range of punishment from one day to one year in jail, a fine of $1,000, or both, or two to ten years in the penitentiary; that he understood the court was not bound by any recommendations with respect to punishment which the prosecuting attorney or his own attorney might make, and that no one had made any promise or representation as to the sentence the court would assess; that he had received no promise of probation; that he had had adequate opportunity to consult with his attorney, and that he was satisfied with his attorney's efforts; that he was not presently under the influence of any narcotics or drugs, and was not suffering in any way which would prevent his understanding of the present proceedings; that he described the circumstances of the sale of LSD which led to the charge, and that he was "definitely guilty."

The court then accepted defendant's guilty plea. The State made no recommendations; defense counsel asked the court to "suspend the judgment * * * for the time being and I have an opportunity to check further into the man's background."

The court then determined that defendant had "three or four" prior convictions involving narcotics and two Dyer Act convictions, and that he took opiates in his own habit. The last narcotics conviction was in California in 1963, upon which he was sentenced to one to ten years, was paroled after serving some three years, and was currently in violation.

The court ordered a presentence investigation; and, upon Mr. Kasakoff's statement of belief that defendant was a suitable candidate for the NARA program, released defendant on his own recognizance so that he could petition the federal court under the Narcotic Addict Rehabilitation Act.

The plea proceedings were resumed March 15, 1971, and the record shows: that Raymond Ellis Beavers was identified as the defendant who pleaded guilty on August 14, 1970, to a charge of selling a restricted drug; that he had, in the interim, been released for presentence investigation and for his treatment under the NARA program, and that he was now present for sentencing pursuant to his guilty plea; that Mr. Kasakoff had seen the presentence investigation report and saw no inaccuracies of "major significance"; that the State had no recommendation; that Mr. Brown of the probation department, despite "serious reservations," was "inclined to recommend probation * * * it would be a fifty-fifty chance, maybe better"; that Mr. Traywick, also of the probation department, felt "the risk might be getting back to the use of drugs themselves"; that both officers recognized defendant's need of a "structured" environment; that defendant felt he was "going to make it."

The court stated: "* * * because of your past record, * * * that you are a parole violator, and your extensive involvement in narcotics, the court isn't going to accept the recommendation of the Probation Department. We do not have any sort of a structured situation that we could supervise you on probation * * *." The court then sentenced defendant to six years' imprisonment.

At the hearing on December 3, 1971, defendant testified: that he discussed his case with Mr. Kasakoff and pleaded guilty on his advice; that Mr. Kasakoff said, "I would go to Fort Worth under the NARA program * * * and that I would come back here and get a suspended sentence or a probation * * *"; that Mr. Kasakoff said he had discussed this with the prosecuting attorney; that he believed this would occur if he pleaded guilty and he pleaded guilty "to go to Forth Worth, to get under the NARA program"; that he was not sentenced at that time and was released to go to Fort Worth; that a petition was prepared for him by Mr. Nugent at the federal court, and within a few days he went to the Fort Worth Hospital where he stayed approximately seven months; that upon his return he went before the court for sentencing and received the six-year sentence; that he knew there was no final judgment against him on his guilty plea in the circuit court at the time he was accepted in the NARA program; that he contended his plea was involuntary in that he relied upon a false promise of his counsel; that when he stated no threats, promises, or inducements had been made to secure his guilty plea, he was following his lawyer's advice to "go along with it, with the court, and don't aggravate him and then that 'you can get to Fort Worth'"; that his testimony to the contrary in the plea proceeding was false; that he testified falsely in order to get into the NARA program and because his lawyer told him to testify falsely upon specific questioning by the court; that movant understood that matters of probation and sentencing were

the prerogative of the court and that the court was not bound by recommendations of counsel; that he knew there was no way counsel could guarantee probation for his client; that he knew this also because of his previous experiences with guilty pleas.

Conceding that the evidence adduced when he pleaded guilty "would probably be sufficient to sustain his plea of guilty under usual circumstances," appellant nevertheless asserts: "When appellant pleaded guilty he believed he had the consent of the circuit court to apply to the federal government for admission as a patient to a government hospital under the Narcotic Rehabilitation Act (NARA program). When he was accepted as a patient by the government under said program he believed he would be entitled to probation, parole or mandatory release." This contention is made on his testimony at the evidentiary hearing as to what he says Mr. Kasakoff told him. He asserts also, on the feeling of Mr. Brown, one of the probation officers in this matter, that "he also had reason to believe that the court would not sentence him to the penitentiary."

It also appears from appellant's citations, hereafter distinguished, that he bases his right to relief on the proposition that "if the defendant should be misled or be induced to plead guilty by fraud or mistake, by misapprehension, fear, persuasion, or the holding out of hopes which prove to be false or ill founded, he should be permitted to withdraw his plea." State v. Cochran, 332 Mo. 742, 60 S.W.2d 1, 2 [7] (1933).

It is clear on this record that the trial court did consent to defendant's making application to, and receiving treatment from the federal government in its Narcotic Addict Rehabilitation program. It is equally clear that the trial court deferred sentencing following defendant's guilty plea to obtain a presentence investigation and to permit accomplishment of the application for, and treatment under NARA. Accordingly, there is no question whether

the trial court exceeded its jurisdiction by suspending imposition of sentence, because the only sentence imposed was that of March 15, 1971, and it was executed forthwith.

■ Similarly, any complaint with respect to defendant's eligibility for the NARA program without first having his charge "duly determined" or his being "on probation, parole, or mandatory release" under Section 3421, supra, would lie in the United States Department of Justice. Ortega v. Rasor, 291 F.Supp. 748 (S.D.Fla. 1968). The trial court simply deferred its sentencing to permit defendant to seek treatment under the NARA program; it was not otherwise interested in the program's eligibility requirements.

It is also clear on this record that the trial court determined that defendant was aware of all his constitutional rights before he permitted him to waive them and plead guilty; that he understood the range of punishment in the event his guilty plea was accepted; that he pleaded guilty voluntarily; that he understood that only the court could assess punishment or grant probation, and that the court was not bound to accept recommendations on punishment from either the state or the defense. It is clear also that when the defendant did suffer the consequences of his guilty plea that he endeavored, unsuccessfully, to undermine his otherwise voluntary guilty plea by asserting he testified falsely in the plea proceedings.

■ In these circumstances the court was faced with two different stories. The court had the duty to adjudge the credibility of these conflicting versions, State v. Shields, 441 S.W.2d 719 [2] (Mo.1969); and there is nothing in this record upon which to say the resolution of the issues was "clearly erroneous." Rule 27.26(j), V.A.M.R.; Crosswhite v. State, 426 S.W. 2d 67 (Mo.1968). See also State v. Armstrong, 433 S.W.2d 270 (Mo.1968).

Movant did not seek to withdraw his guilty plea. Rule 27.26, supra. Even so, withdrawal after sentence is appropriate only to correct manifest injustice; and where the record shows, as in this case, a plea of guilty voluntarily entered with an understanding of the nature of the charge, then no manifest injustice resulted. State v. Sayre, 420 S.W.2d 303, 305 [1, 2] (Mo. 1967).

Appellant's citations are to be distinguished from this case, viz.: In State v. Cochran, supra, 60 S.W.2d l. c. 4, a misunderstanding as to punishment between defendant, his counsel, and the prosecuting attorney, was "the true basis of appellant's mistake of fact and misapprehension of the penalty his plea of guilty would bring to him," and any conflicts in the testimony did "not raise acute and awkward question of fact" as to preclude relief. In State v. Hovis, 353 Mo. 602, 183 S.W.2d 147, 148 (1944), statements made by the prosecutor to the defendant were such as to cause him to believe that he would be paroled if he entered a plea of guilty, e. g., "'Yes. I have told him, in my opinion, he would get a parole.'" In State v. Dale, 282 Mo. 663, 222 S.W. 763, 764 (1920), the court found that "the statements made by the prosecutor to the defendant were such as did cause him to believe that he would be paroled if he entered a plea of guilty." In State v. Stephens, 71 Mo. 535 (1880), a special trial judge, after his election and before taking the bench, held an interview with attorneys for defendant by which they were led to believe that if defendant would plead guilty he would receive the minimum punishment. This misunderstanding was communicated to defendant, who then pleaded guilty and was awarded the maximum punishment. In State v. Blatherwick, 238 Mo.App. 1005, 191 S.W.2d 1021 (1946), it was obvious from the nature of the plea proceedings, as well as from oral statements made to the court by counsel at the motion hearing, that defense counsel mistakenly assumed that there would be a parole following his client's guilty plea, and that acting on this assumption, he advised defendant to plead guilty. In State v. Roach, 447 S.W.2d 553 (Mo.1969), the examination of defendant prior to acceptance of his guilty plea was "perfunctory" and did not suffice to demonstrate a voluntary guilty plea.

None of the foregoing resembles the present case.

Judgment affirmed.

All concur.